**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CARY RINEHART, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO.  CIV-05-1473-HE |
| | ) | |
| GABRIELLE SMART, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

Plaintiffs Cary Rinehart and Windy Rinehart, individually and as mother and next friend of H.R., C.R. and M.R., filed this action against defendants Gabrielle Smart and Linda Walker, Oklahoma Department of Human Services ("DHS") counselors or caseworkers, and Grey McKellar, apparently a counselor acting under contract with DHS.  They also assert claims against Linda Smith, the Director of Children and Family Services Division of DHS, Howard Hendrick, the Director of DHS, and the State of Oklahoma, ex rel. Oklahoma Department of Human Services.  In an amended complaint, plaintiffs allege the defendants violated their constitutional right to maintain a family relationship and violated Oklahoma law when they made verbal threats to take away their children and caused a deprived child action to be filed against them by a state district attorney.  In particular, plaintiffs allege that defendants Smart, Walker and McKellar violated their civil rights under 42 U.S.C. § 1983, that defendants Smart, Walker and Smith conspired to violate plaintiffs' civil rights under 42 U.S.C. § 1985(3), that defendant Smith violated 42 U.S.C. § 1986 because she had knowledge of the conspiracy but failed to act, that defendants Smart, Walker and DHS

maliciously prosecuted plaintiffs in violation of Oklahoma law, that defendant DHS violated its duty under Article 25, § 1 of the Oklahoma Constitution by failing to provide assistance and care to plaintiffs' children, and that defendant DHS violated plaintiffs' due process rights under the Fourteenth Amendment. Plaintiffs seek money damages and an order permanently enjoining defendants Smith and Hendrick from allowing their employees to take actions against plaintiffs and other citizens of Oklahoma which have no foundation in law or fact and from paying bonuses or providing benefits to caseworkers based on the amount of cases filed or money collected against Oklahoma parents.

Defendants DHS, Smart, Walker, Smith and Hendrick have filed a motion to dismiss plaintiffs' amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 23).[1] They argue that plaintiffs' claims against DHS and its employees in their official capacities are barred by sovereign immunity, the individual defendants are entitled to qualified immunity, plaintiffs have failed to properly plead a conspiracy under §§ 1985 or 1986, their claim for malicious prosecution is barred under the Oklahoma Governmental Tort Claims Act, no private right of action is afforded under Article 25, § 1 of the Oklahoma Constitution, their claim for injunctive relief should be denied as too broad, open-ended and speculative, and their claim for punitive damages against DHS is barred. Plaintiffs have filed a response to defendants' motion to dismiss and a motion to certify a question of law to the Oklahoma Supreme Court with respect to their claim arising under the Oklahoma

---

[1]*Defendant McKellar has not filed a motion to dismiss.*

Constitution. (Doc. #33). Upon review of the amended complaint and the papers submitted by the parties, the court concludes defendants' motion to dismiss should be granted in part and denied in part and plaintiffs' motion to certify should be denied.

Dismissal under Rule 12(b)(6) is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003) (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002)). In evaluating the amended complaint, the court has accepted all well-pleaded factual allegations as true and has construed those allegations and any reasonable inferences that might be drawn from them in the light most favorable to the plaintiffs. Id.

According to their complaint, plaintiffs, in April of 2005, sought counseling for their son from DHS. They made an appointment with defendant McKellar but ended up canceling the appointment because of "circumstances beyond [their] control." Compl., p. 2. Plaintiffs allege they were unsuccessful in attempting to reschedule the appointment despite several phone calls to defendants McKellar and Smart. Plaintiffs allege defendant McKellar contacted defendant Smart on July 27, 2005, and told her that the appointment had been canceled and not rescheduled. Defendant Smart contacted plaintiffs on August 11, 2005, regarding the cancellation. During this phone conversation, plaintiffs allege defendant Smart engaged in a "verbal altercation" with Windy Rinehart regarding "proper and improper parenting." Compl., p. 3. During the altercation, Smart allegedly threatened to take plaintiffs' children away by filing a deprived child petition. This same threat was also

allegedly made by defendant Walker to plaintiffs. Based on these facts, plaintiffs allege defendants Smith and Walker contacted the district attorney and filed a "Safety Assessment Form" alleging plaintiffs lacked parenting skills and self-control, were unemployed, that one of their children was "highly vulnerable to severe abuse" and plaintiffs were unwilling to protect their young daughter. Compl., p. 3. As a result of these allegations, the district attorney filed a deprived child petition against plaintiffs alleging they were unfit parents and recommending the children be placed under DHS supervision. Plaintiffs allege they were forced to hire an attorney to defend the false allegations contained in the deprived child petition which was eventually dismissed by the State of Oklahoma.

In response to the motion to dismiss, plaintiffs concede that their claim for malicious prosecution is premature and seek to withdraw the claim. In light of plaintiffs' position, the court **DISMISSES** plaintiffs' claim for malicious prosecution.

Plaintiffs also concede they cannot recover punitive damages against DHS or its officials, see, e.g., Dill v. City of Edmond, 155 F.3d 1193, 1210 (10th Cir. 1998) ("municipalities are not liable for punitive damages under § 1983"), and that their claims against DHS and its officials for money damages are barred by the Eleventh Amendment.[2] See, e.g., Chaffin v. Kan. State Fair Bd., 348 F.3d 850, 859 (10th Cir. 2003) ("The Eleventh

---

[2]*Plaintiffs also seek injunctive relief against defendants Smith and Hendrick in their official capacities. In general, Eleventh Amendment immunity does not preclude a suit against a state official which seeks only prospective injunctive relief in order to end a continuing violation of federal law. See, e.g., Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996)). Plaintiffs' request for injunctive relief is discussed infra, pp. 10-11.*

Amendment guarantees that 'nonconsenting States may not be sued by private individuals in federal court.'") (quoting Bd. of Trustees of Univ. Of Ala. v. Garrett, 531 U.S. 356, 363 (2001)); Frazier v. Simmons, 254 F.3d 1247, 1253 (10th Cir. 2001) (noting that the Eleventh Amendment bars suit against a state official named as a defendant when the state "is the real substantial party in interest"). As a result, the court **DISMISSES** plaintiffs' claims against DHS and its employees in their official capacities for compensatory and punitive damages.[3]

Plaintiffs argue that their claims for compensatory damages and injunctive relief under Article 25, § 1 of the Oklahoma Constitution against DHS and/or its officials are not barred by sovereign immunity. However, the Supreme Court has specifically held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). With respect to alleged violations of state law, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst, 465 U.S. at 121. Furthermore, immunity for such a claim applies both to requests for damages and injunctive relief. Pennhurst, 465 U.S. at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs

---

[3]*Although conceding the issue, plaintiffs urge the court to disregard controlling United States Supreme Court authority and deny the defendants sovereign immunity. The court declines to do so.*

state officials on how to conform their conduct to state law."). As a result, plaintiffs' claims against DHS and its officials under Article 25, § 1 of the Oklahoma Constitution are **DISMISSED**.[4]

Although less than clear from their response, it appears plaintiffs may be raising claims against defendants Smith and Hendrick in their individual capacities for violating plaintiffs' civil rights.[5] However, as defendants assert, plaintiffs make no allegations of personal participation on the part of these defendants for the alleged constitutional violations. See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation."); Jenkins v. Wood, 81 F.3d 988, 994-995 (10th Cir. 1996) ("[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, just as with any individual defendant, the plaintiff must establish a

---

[4]*To the extent plaintiffs seek to assert a claim under Article 25, § 1 against defendant Hendrick in his individual capacity, the court concludes such claim is not actionable. The plain language of section 1 neither imposes a duty on defendant Hendrick individually nor grants plaintiffs a private right of action, either explicitly or implicitly, to enforce its provisions. See Okla. Const. Art. 25, § 1 ("In order to promote the general welfare of the people of the State of Oklahoma and for their protection, security, and benefit, the Legislature and the people by initiative petition are hereby authorized to provide by appropriate legislation for the relief and care of needy aged persons who are unable to provide for themselves, and other needy persons who, on account of immature age, physical infirmity, disability, or other cause, are unable to provide or care for themselves . . . ."). See also, Holbert v. Echeverria, 744 P.2d 960, 963-64 (Okla. 1987) (superseded by statute as stated in Walls v. Am. Tobacco Co., 11 P.3d 626, 628 (Okla. 2000)). As a result, any such claim is **DISMISSED** and plaintiffs' motion to certify a question of law on this basis (Doc. #33) is **DENIED**.*

[5]*Plaintiffs state that they "need only make the dual allegation that the State officials acted in both private and official capacity" and that "[t]he evidence will show which capacity the actor violated." Resp., p. 7.*

deliberate, intentional act by the supervisor to violate constitutional rights.") (internal quotation omitted). See, also, DeAnzona v. City and County of Denver, 222 F.3d 1229, 1234 (10th Cir. 2000) ("In order to overcome the qualified immunity of a supervisor, a plaintiff most show that the defendant-supervisor took deliberate action in directing the constitutional violation, or had actual knowledge of the violation and allowed the violation to continue."). As a result, any such claims against defendants Smith and Hendrick in their individual capacities under §1983 are **DISMISSED**.

In addition, with respect to plaintiffs' allegations of conspiracy against all of the individual defendants under sections 1985(3) and 1986, the court concludes such claims should be dismissed. Plaintiffs make no allegations in the amended complaint that the defendants' conduct was motivated by race or class-based discrimination.[6] As a result, no claim under § 1985(3) is stated. See Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990) ("[S]ection 1985(3) provides for redress of injuries which result from private conspiracies driven by 'some racial or otherwise class-based discriminatory animus.'") (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Because no claim under §1985(3) is stated, plaintiffs' claim under § 1986 also fails. See Santistevan v. Loveridge, 732 F.2d 116, 118 (10th Cir.1984) ("[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985."). Accordingly, plaintiffs' claims under both sections are **DISMISSED**.

---

[6]*Plaintiffs do not respond to defendants' argument on this basis.*

With respect to plaintiffs' claims under § 1983 against defendants Smart and Walker, defendants claim they are entitled to qualified immunity. The general effect of qualified immunity is that "[w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Once the defense is asserted, a civil rights plaintiff has the burden of showing that the defendant's actions violated a statutory or constitutional right and that the right was "clearly established at the time of the conduct at issue." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995) (internal citations omitted). A right is clearly established when an objectively reasonable official should have known that his or her conduct was unlawful. Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005). While "[t]he particular action in question . . . need not have been previously held unlawful," Eastwood v. Dep't of Corr., 846 F.2d 627, 630 (10th Cir. 1988), "the alleged unlawfulness must be apparent in light of preexisting law." Medina v. City and County of Denver, 960 F.2d 1493, 1497 (10th Cir. 1992) (internal quotations omitted).

In this case, plaintiffs assert their substantive due process right to familial integrity was violated when defendants Smart and Walker provided false information to the district attorney who in turn filed a deprived child petition seeking to take custody of their children. "The Supreme Court has long recognized family relationships as one of the liberties protected by the due process clause of the fourteenth amendment." Spielman v. Hildebrand,

873 F.2d 1377, 1383 (10th Cir. 1989). This right is not "absolute or unqualified," however, as "the state itself has a compelling interest in the health, education and welfare of children." Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir. 1994). Because "the constitutional right to familial integrity is amorphous and always must be balanced against the governmental interest involved," the "threshold constitutional violation analysis may run together with the 'clearly established' analysis." Martinez, 35 F.3d at 1490.

Parents have no "constitutional right to be free from child abuse investigations." Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1988). However, "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Croft v. Westmoreland County Children and Youth Servs., 103 F.3d 1123, 1126 (3d Cir. 1997) (citing Lehr v. Robertson, 463 U.S. 248, 254-56 (1983)). The central issue here is whether the information available to defendants Smart and Walker at the time they pursued the deprived child action would have created an "objectively reasonable suspicion" that the plaintiffs' children were in danger of abuse or neglect. Croft, 103 F.3d at 1126. See, e.g., Martinez, 35 F.3d at 1491 (holding social worker was entitled to qualified immunity for pursuing a neglect action because worker's actions were objectively reasonable in light of all of the circumstances known to her at the time). "Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power." Croft, 103 F.3d at 1126.

Accepting the allegations in the amended complaint as true, as the court must on a motion to dismiss, the court concludes defendants Smart and Walker are not entitled to

9

qualified immunity on the present showing. The alleged facts indicate that defendants Smart and Walker made false accusations of abuse and neglect and caused a deprived child action to be filed against plaintiffs based simply on a missed appointment and a verbal disagreement between Windy Rinehart and defendant Smart. The facts as presented do not create an objectively reasonable suspicion that plaintiffs' children were in danger of abuse or neglect and instead indicate defendants Smart and Walker may have had some alternative motive in pursuing an investigation against the plaintiffs. See, e.g., Kottmyer v. Maas, 436 F.3d 684, 691 n.1 (6th Cir. 2006) (an investigation taken in bad faith or with malicious motive may constitute a violation of a parent's right to familial association). As a result defendants' motion to dismiss plaintiffs' § 1983 claims against Smart and Walker, in their individual capacities, on the basis of qualified immunity is **DENIED**.[7]

Finally, plaintiffs allege their claim for injunctive relief against defendants Smith and Hendrick in their official capacities should not be dismissed based on Ex Parte Young, 209 U.S. 123 (1908). However, they fail to respond to defendants' argument that their requested relief is overly broad, open-ended and speculative.

As previously noted, Eleventh Amendment immunity does not preclude a suit against a state official which seeks only prospective injunctive relief in order to end a continuing violation of federal law. Supra, p. 4, n.1. However, "[i]t is well settled an injunction must be narrowly tailored to remedy the harm shown." Garrison v. Baker Hughes Oilfield

---

[7]*This conclusion may well change once the facts are more fully developed during the discovery process. Defendants may re-raise the issue by appropriate motion.*

Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002). See Fed. R. Civ. P. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."). "[B]road injunctions that merely instruct the enjoined party not to violate a statute" are impermissible. Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed. Cir. 2004) (citing NLRB v. Express Publ'g Co., 312 U.S. 426, 435-36 (1941)).

In this case, plaintiffs ask the court to enjoin defendants Smith and Hendrick from violating the constitutional rights of plaintiffs and other Oklahoma parents in the future. Such a request is not narrowly tailored to end an alleged violation of federal law. Accordingly, plaintiffs' claim for injunctive relief is **DISMISSED**.[8]

Giving effect to the provisions of this order and absent further amendment, this case will go forward as to plaintiffs' § 1983 claims against defendants Smart and Walker, in their

---

[8]*Plaintiffs request a slightly more specific injunction to curb the defendants' alleged violations of Oklahoma law. However, as previously noted, any such request is barred by sovereign immunity. See, supra, pp 5-6.*

11

individual capacities, and the claims against defendant McKellar. The case is dismissed as to plaintiffs' other claims.

**IT IS SO ORDERED**.

Dated this 25th day of May, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE